LOCKE LORD LLP
F. Phillip Hosp (State Bar No. 265225)
phosp@lockelord.com
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone: 213-485-1500
Fax: 213-485-1200

Ira S. Greene (*pro hac vice* application forthcoming)
ira.greene@lockelord.com
Brookfield Place
200 Vesey Street
New York, New York 10281
Telephone: 212-912-2880
Facsimile: 888-325-9691

Attorneys for Plaintiff
Pacific Recovery Partners, LLC

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC RECOVERY PARTNERS, LLC<br><br>Plaintiff,<br><br>vs.<br><br>DAVID T. SMITH, SWISSPARTNERS MARQUARD HERITAGE AG, SWISSPARTNERS GROUP AG, FIDUCIARY ADMINISTRATIVE SERVICES (PACIFIC) LTD., individually and as Trustee for the CICLADIAN TRUST, CHRISTIAN WALTER ROCKSTROH, CHRIST JOHANN COLLENBERG, RANDALL K. BARTON, GORDON SPINKS, DOUGLAS T. PREUDHOMME, ANDREW R. LAMB, EBSWORTH HOLDING & FINANCE LTD., MARK HOLDING & FINANCE LTD., SPWM MANAGEMENT LIMITED, AMF INVESTMENT LIMITED, and DOES 1-10<br><br>Defendants. | CASE NO. 2:18-cv-06291<br><br>**COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF** |

COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

1    Plaintiff Pacific Recovery Partners, LLC ("***PRP***" or "***Plaintiff***"), by and

2  through its attorneys, and as successor in interest to Holbrook Properties, Inc., JRM

3  Interim Investors, LP, Muse Children's GS Trust, Muse Family Enterprises, Ltd., Oak

4  Stream Investors II, Ltd., Strongback Holdings, Limited (f/k/a Strongback Holdings),

5  TTM Note Holdco, LLC, and Wood Luxembourg Properties, Sarl (collectively, the

6  "***Muse Parties***"), hereby complains against David T. Smith ("***Smith***"), Swisspartners

7  Marcuard Heritage AG ("***Swisspartners Marcuard***"), Swisspartners Group AG

8  ("***Swisspartners Group***" and, together with Swisspartners Marcuard,

9  "***Swisspartners***"), Fiduciary Administrative Services (Pacific) Ltd. ("***FAS***"),

10  individually, FAS or its successor, if any, as the Trustee for the Cicladian Trust

11  (defined below), Christian Walter Rockstroh ("***Rockstroh***"), Christ Johann Collenberg

12  ("***Collenberg***"), Randall K. Barton ("***Barton***"), Gordon Spinks ("***Spinks***"), Douglas T.

13  Preudhomme ("***Preudhomme***"), Andrew R. Lamb ("***Lamb***"), Ebsworth Holding &

14  Finance Ltd. ("***EBF***"), Mark Holding & Finance Ltd. ("***MHF***") SPWM Management

15  Limited ("***SPWM***"), AMF Investment Limited ("***AMF***"), and John Does 1-10

16  (Swisspartners, FAS, Rockstroh, Collenberg, Barton, Spinks, Preudhomme, Lamb,

17  EBF, MHF, SPWM, AMF, and the Cicladian Trust Trustee (defined below) are

18  collectively referred to herein as the "***Facilitating Defendants***," each of which, along

19  with Smith, is a "***Defendant***" and are, collectively, the "***Defendants***") as follows:

20                          **NATURE OF THE ACTION**

21       1.    This is an action brought to avoid and recover fraudulent transfers made

22  by Smith, or that he caused to be made, aided and abetted by the Facilitating

23  Defendants, and for compensatory and exemplary (or "punitive") damages against the

24  Defendants for the harm caused by their oppressive, fraudulent, and malicious

25  conduct.

26       2.    This action is brought pursuant to the California Uniform Voidable

27  Transactions Act and, to the extent that Plaintiff's right of action accrued or the

28  Challenged Transfers (defined below) were made prior to January 1, 2016, the

California Fraudulent Transfer Act as then in force, Cal. Civil Code § 3439, *et seq.*, (hereafter, for simplicity, both versions shall be referred to as the "***UVTA***") and the common law of the State of California with respect to fraudulent transfers and the aiding and abetting of fraudulent transfers.

3.      PRP is the holder of a judgment in the principal amount of $21,061,219.19 plus post-judgment interest (the "***Judgment***"), entered by the Superior Court of the State of California for the County of Los Angeles (the "***State Court***") on January 25, 2013 against Smith and his alter ego, BTM Funding, Inc. ("***BTM***"), in a lawsuit brought by the Muse Parties and sometimes referred to as the "***Muse Litigation***."  The present outstanding amount of the Judgment through June 5, 2018, inclusive of interest, exceeds $26,545,000.

4.      Following the jury verdict in the Muse Litigation, the Muse Parties took various steps to identify and locate Smith's assets in multiple jurisdictions in California, Delaware, Florida, Nevada, Connecticut, and New York.  Smith and his attorneys actively sought to obstruct those proceedings to prevent the Muse Parties from locating and enforcing the Judgment against Smith's assets.  Smith repeatedly failed to respond to post-judgment discovery requests, or to do so completely, even when compelled by court order.  When examined directly about his assets, Smith's answers were incomplete, evasive, and non-credible.

5.      Smith then sought protection pursuant to the U.S. Bankruptcy Code by commencing a chapter 7 bankruptcy case on the other side of the country before the United States Bankruptcy Court for the District of Connecticut (the "***Bankruptcy Court***") where the pattern of evasiveness and failure to disclose continued, so much so that the Bankruptcy Court ultimately denied his discharge, finding that "he knowingly and fraudulently made false statements under oath willfully and with intent to defraud in the course of the bankruptcy case."

6.      Smith's malfeasance also includes intentionally and fraudulently hindering and delaying his creditors, including the Muse Parties, by attempting

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

deliberately to conceal assets and remove assets into trusts, bank accounts, and shell companies outside the United States, and by omitting information and providing false information about his assets in court documents and court examinations under oath, including before the Bankruptcy Court and to the duly appointed trustee in his chapter 7 bankruptcy case, Roberta Napolitano (the "***Chapter 7 Trustee***").

7.     Upon information and belief, to avoid payment of obligations to the Muse Parties and other creditors, Smith caused a trust to be set up known as the "***Cicladian Trust***" and other trusts (the "***Other Trusts***").

8.     Upon information and belief, the initial trustee of the Cicladian Trust was FAS, an entity located in the Republic of Vanuatu.

9.     Upon information and belief, FAS is currently a trustee of the Cicladian Trust.

10.     Upon information and belief, individuals and entities located in the United States, England, Switzerland, Vanuatu and other countries (a) participated in the setup of the Cicladian Trust, (b) participated in the administration of the Cicladian Trust, and/or (c) continue to participate in the administration of the Cicladian Trust. These individuals and entities include, but are not limited to, the Facilitating Defendants.

11.     Upon information and belief, Smith transferred, or caused to be transferred, more than $50 million to the Cicladian Trust.  Upon information and belief, Smith has received, directly and/or indirectly, more than $11 million from the Cicladian Trust.

12.     Some or all of the Facilitating Defendants have engaged in similar action for or on behalf of other individuals, including other U.S. citizens, to shield or protect assets from creditors and taxing authorities.

13.     In May 2015, Swisspartners entered into a non-prosecution agreement (the "***NPA***") with the U.S. Department of Justice and turned over $3.5 million in forfeited fees and another $900,000 in restitution of unpaid taxes for their part in

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

assisting some 110 U.S. taxpayers with tax evasion. Swisspartners Group also turned over the names of its 110 U.S. taxpayer-clients to the Department of Justice and the Internal Revenue Service.[1]

14. Upon information and belief, notwithstanding the NPA, these asset-shielding practices have continued to be part of Swisspartners' business model, as demonstrated by Swisspartners' role with respect to Smith's malfeasance as described in this Complaint.

15. In accordance with the foregoing, PRP brings this action, in furtherance of its effort to enforce the Judgment against Smith, for a judgment (a) avoiding Smith's transfers to the Cicladian Trust and recovering those transfers to satisfy the Judgment, (b) directing the Defendants to turn over the assets of the Cicladian Trust to satisfy the Judgment, (c) awarding compensatory and punitive damages to PRP against Smith and against the Facilitating Defendants for their role in aiding and abetting Smith's fraudulent transfers, and (d) directing the Defendants to cooperate with PRP's efforts obtain the assets of the Cicladian Trust, including by instructing the Defendants to make the assets of the Cicladian Trust available to satisfy the Judgment.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because: (a) there is complete diversity of citizenship among the parties, as this action is between an entity formed under the laws of the State of Texas (*i.e.*, Plaintiff), on the one hand, and residents of, and entities formed by, different states (*i.e.*, California) and foreign states, on the other; and (b) the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

---

[1] A copy of the Department of Justice's asset forfeiture complaint against Swisspartners' $3.5 million in wrongfully obtained fees is attached as **Exhibit A** (the "***Forfeiture Complaint***"). A copy of the NPA is attached to the Forfeiture Complaint as Exhibit A. The Statement of Facts supporting the NPA is attached to the NPA as Exhibit 1.

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

4

17.     This Court has personal jurisdiction over Defendants because, among other things, (a) Defendant Smith is an individual resident of the State of California (this "***State***") and lives, transacts, and does business in this State and in this judicial district, (this "***District***"), (b) the actions of the Defendants that form the bases for this cause of action against the Defendants took place, had effect, or caused damage in this State and in this District, and (c) the Cicladian Trust is the mere alter ego of Smith and, as such, the Facilitating Defendants are subject to personal jurisdiction in this State due to their willful participation in Smith's wrongful conduct.  Accordingly, a court of general jurisdiction in this State would have personal jurisdiction over the Defendants.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (a) Defendant Smith is a resident of this State and resides in this District; (b) a substantial part of the events or omissions giving rise to this action occurred in this District; and (c) the Defendants are subject to this Court's personal jurisdiction with respect to this action.

## **PARTIES**

19.     Plaintiff Pacific Recovery Partners, LLC is a limited liability company formed under the laws of the State of Texas.

20.     Defendant David T. Smith is a resident of the State of California.

21.     Upon information and belief, Defendant Swisspartners Marcuard Heritage AG:

       a.     is an entity formed under the laws of Switzerland,

       b.     has its principal office in Zurich, Switzerland;

       c.     is a trustee of the Cicladian Trust;

       d.     participated in the administration of the Cicladian Trust;

       e.     participated in the diversion of Smith's assets to the Cicladian Trust;

       f.     participated in the events giving rise to PRP's fraudulent transfer

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

1   claims against Smith that consisted of actions taken, effects

2   occurring, or damage caused within this State, including assisting

3   Smith in establishing and/or transferring assets to the Cicladian

4   Trust and/or the Other Trusts; and

5   g.   is sued here in its individual capacity and as the trustee, along with

6   any successor or additional trustee, of the Cicladian Trust.

7   22.   Upon information and belief, Defendant Swisspartners Group AG:

8   a.   is an entity formed under the laws of Switzerland;

9   b.   has its principal office in Zurich, Switzerland;

10   c.   assisted in the administration of the Cicladian Trust;

11   d.   participated in the diversion of Smith's assets to the Cicladian

12   Trust; and

13   e.   participated in the events giving rise to PRP's fraudulent transfer

14   claims against Smith that consisted of actions taken, effects

15   occurring, or damage caused within this State, including assisting

16   Smith in establishing and/or transferring assets to the Cicladian

17   Trust and/or the Other Trusts.

18   23.   Upon information and belief, Defendant Fiduciary Administrative

19   Services (Pacific) Ltd.:

20   a.   is an entity associated with Swisspartners

21   b.   is located in the Republic of Vanuatu;

22   c.   was the initial trustee for the Cicladian Trust;

23   d.   assisted in the administration of the Cicladian Trust;

24   e.   participated in the events giving rise to PRP's fraudulent transfer

25   claims against Smith that consisted of actions taken, effects

26   occurring, or damage caused within this State, including assisting

27   Smith in establishing and/or transferring assets to the Cicladian

28   Trust and/or the Other Trusts; and

6

f.   is sued here in its individual capacity and as the trustee of the Cicladian Trust, along with any successor or additional trustee, including Swisspartners Marcuard (collectively, the "***Cicladian Trust Trustee***").

24.   Upon information and belief, Defendant Christian Walter Rockstroh:

a.   is a partner of the Swisspartners Group who is involved in the administration of the Cicladian Trust; and

b.   participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects occurring, or damage caused within this State, including assisting Smith in establishing and/or transferring assets to the Cicladian Trust and/or the Other Trusts.

25.   Upon information and belief, Defendant Christ Johann Collenberg

a.   is a partner of the Swisspartners Group who is involved in the administration of the Cicladian Trust; and

b.   participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects occurring, or damage caused within this State, including assisting Smith in establishing and/or transferring assets to the Cicladian Trust and/or the Other Trusts.

26.   Upon information and belief, Defendant Randall K. Barton:

a.   is a U.S. citizen;

b.   conducts business in this State, including with Smith;

c.   maintains an office within the offices of the accounting firm Dixon Wilson in London, England; and

d.   participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects occurring, or damage caused within this State, including assisting

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

7

Smith in establishing and/or transferring assets to the Cicladian Trust and/or the Other Trusts.

27. Upon information and belief, Defendant Gordon Spinks:

a. is a subject of the United Kingdom of Great Britain and Northern Ireland;

b. is a partner in the accounting firm of Dixon Wilson, located at 22 Chancery Lane, London England;

c. participated in activities to assist individuals, including but not limited to David Smith, in removing assets from the reach of such parties' creditors ("*Asset Removal Activities*");

d. worked in concert with Swisspartners with respect to the above-described Asset Removal Activities;

e. at least with respect to Smith, worked in concert with Barton with respect to the above-described Asset Removal Activities;

f. participated in creating entities and taking actions which facilitated the Challenged Transfers (defined below);

g. conducts business in this State, including with Smith; and

h. participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects occurring, or damage caused within this State, including assisting Smith in establishing and/or transferring assets to the Cicladian Trust and/or the Other Trusts.

28. Upon information and belief, Defendant Douglas T. Preudhomme:

a. is a U.S. citizen; and

b. participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects occurring, or damage caused within this State, including assisting Smith in establishing and/or transferring assets to the Cicladian

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

8

Trust and/or the Other Trusts.

29.   Upon information and belief, Defendant Andrew R. Lamb:

   a.   is a subject of the United Kingdom of Great Britain and Northern Ireland; and

   b.   participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects occurring, or damage caused within this State, including assisting Smith in establishing and/or transferring assets to the Cicladian Trust and/or the Other Trusts.

30.   Upon information and belief, Defendant Ebsworth Holding & Finance Ltd.:

   a.   is an entity located in the British Virgin Islands; and

   b.   participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects occurring, or damage caused within this State, including assisting Smith in establishing and/or transferring assets to the Cicladian Trust and/or the Other Trusts.

31.   Upon information and belief, Defendant Mark Holding & Finance Ltd.:

   a.   is an entity located in the British Virgin Islands; and

   b.   participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects occurring, or damage caused within this State, including assisting Smith in establishing and/or transferring assets to the Cicladian Trust and/or the Other Trusts.

32.   Upon information and belief, Defendant SPWM Management Limited:

   a.   is an entity located in the British Virgin Islands; and

   b.   participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF

occurring, or damage caused within this State, including assisting Smith in establishing and/or transferring assets to the Cicladian Trust and/or the Other Trusts.

33.   Upon information and belief, Defendant John Doe 1:

a.   is a partner of the Swisspartners Group, which includes Swisspartners Marcuard; and

b.   participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects occurring, or damage caused within this State, including assisting Smith in establishing and/or transferring assets to the Cicladian Trust and/or the Other Trusts.

34.   Upon information and belief, Defendants John Does 2-10 are individuals whose identities are not presently known to Plaintiff and who participated in the events giving rise to PRP's fraudulent transfer claims against Smith that consisted of actions taken, effects occurring, or damage caused within this State, including assisting Smith in establishing and/or transferring assets to the Cicladian Trust and/or the Other Trusts.  The Complaint herein will be amended to include the name or names of these individuals and specific details of their involvement in PRP's fraudulent transfer claims against Smith as and when such information becomes available.

## BACKGROUND

35.   Plaintiff is the holder of a judgment in the principal amount of $21,061,219.19 (the "*Judgment*"), entered by the Superior Court of the State of California for the County of Los Angeles (the "*State Court*") on January 25, 2013 against Smith and his alter ego, BTM Funding, Inc. ("*BTM*"), in a lawsuit brought by the Muse Parties and sometimes referred to as the "*Muse Litigation*."

36.   Over time, with the accrual of post-judgment interest, the total amount of the Judgment has grown to more than $26,545,000.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

10

37.     On September 30, 2014, the Judgment was upheld by the Court of Appeal of California, Second Appellate District, in an unpublished opinion, *Muse Family Enterprises v. BTM Funding, Inc.*, No. B247757, 2014 WL 4840667 (Cal. Ct. App. Sept. 30, 2014) a true copy of which is attached hereto as **Exhibit B**, and which recites the record put before the State Court in detail.

### Smith's Underlying Fraud on the Muse Parties

38.     Smith is a sophisticated businessman who accumulated assets of at least $60 million through various businesses, beginning in the 1970's.

39.     In 2007, Smith approached his friend, John Muse ("***Muse***"), about having the Muse Parties invest in BTM's church construction projects in the United States. *Id.* at *2-3.

40.     Smith agreed to invest $10 million in BTM as a capital asset, to invest as much as the Muse Parties did in the church projects, and to stand behind the construction loans if they failed for any reason. *Muse Fam. Enters.*, 2014 WL 4840667, at *3-4.

41.     Instead, in August 2008, Smith used the funds invested with BTM to purchase a mansion formerly owned by Kobe Bryant located in Pacific Palisades, California for $9.84 million (the "***Residence***"). *Id.* at *3.

42.     Smith transferred $8 million into BTM and caused BTM to take out a $2 million business loan to fund the remainder of the purchase price. *Id.*

43.     On November 3, 2008, Smith caused to be executed a quitclaim deed which transferred the Residence from BTM to himself. *Id.*

44.     On the same day, Smith signed a quitclaim deed transferring the Residence to his then-wife (his fourth wife), Carmen Copple Smith ("***Carmen***"). *Id.* at *4.

45.     No consideration was paid for these transfers. *Id.*

46.     These quitclaim deeds were not recorded, however, and the Residence was listed as a $10 million fixed asset of BTM. *Id.*

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF

47.     In July 2009, David used the property as a BTM asset to obtain a $500,000 loan in BTM's name for his personal use.  *Id.*

48.     The loan application indicated there were no liens on the property, and failed to disclose that Smith had already executed the quitclaim deeds.  *Id.*

49.     Later, at the trial on the Muse Litigation, Smith testified that in connection with this loan he considered BTM to be nothing but a "vehicle" for him and that he owned and controlled BTM.  *Id.*

50.     Smith also testified in the Muse Litigation that a holding company for BTM, called BTM Servicing, LLC "was me"; "I'm one and the same.  The holding company was me."  *Id.*

51.     In 2009, several financial problems with BTM and the church projects came to light.  *Id.*  For example, funds were not properly segregated between projects; another project BTM had not been paying the investors the sums owed; record-keeping was inadequate; some churches sued BTM after construction could not be completed because so much money had gone missing; and Muse discovered that Smith had not followed through on his promise to invest equal amounts of money in the projects and that Smith's $10 million capital commitment consisted of the Residence.  *Id.* at *4-5.

52.      When Smith was confronted with these issues, he recorded quitclaim deeds from BTM to self and from himself to Carmen on September 24, 2009, nearly a year after they had been executed.  *Id* at *5.

53.     The next day, Carmen executed and recorded a quit claim deed the Residence from herself to her trust ("***Carmen's Trust***"), which had been formed that day.  *Id.*

### Smith's IRS Settlement

54.     While the fraud described above was unravelling with the Muse Parties, Smith participated in the IRS's Offshore Voluntary Disclosure Program to defer criminal penalties associated with previously-undisclosed taxable income that he

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF

earned abroad. Smith's settlement with the IRS included a finding that he and his third wife Norma Smith ("***Norma***"), whom Smith had divorced in 2008, "underreported federal income taxes during the period 2003 through 2007 through offshore financial arrangement (including arrangements with foreign banks, financial institutions, corporations, partnerships, trusts, and other entities)."

55. Based on disclosures to the IRS and Smith's claimed net worth reported to the IRS, PRP is informed and believes, and upon information and belief alleges, that Smith did not fully disclose all of his unreported overseas earnings. Upon information and belief, Smith has substantial assets and interests in Switzerland and other tax havens abroad.

56. While Smith's IRS immunity application was pending, Norma filed a lawsuit against Smith in New York alleging that Smith failed to disclose assets during the negotiation of their separation agreement ("***New York Action***").

57. In connection with her claims, Norma alleged that "[Smith] made deposits in a sum in excess of sixteen million dollars ($16,000,000.00) into foreign bank accounts and/or domestic bank accounts which [Smith] had either created in [her] name or in which [Smith] maintained a financial interest . . . ."

58. Norma also identified accounts at Barclays Bank in the Channel Islands, HSBC in the United Kingdom, HSBC in the Channel Islands, HSBC in the United States, Coutts & Co. in the United Kingdom, and Bank of America.

59. Norma also filed an affidavit in the New York Action declaring that Smith had an ownership or beneficial interest in nearly four dozen foreign entities that he had, she alleged, failed to disclose.

### The Muse Litigation

60. In September 2010, the Muse Parties sued BTM, Smith, Carmen, and Carmen's Trust for breach of contract, fraud, negligent misrepresentation, and breach of fiduciary duty. *Muse Fam. Enters.*, 2014 WL 4840667, at \*5.

61. They also sought to void the quitclaim deeds of property from BTM to

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

13

Smith and from Smith to Carmen as fraudulent transfers; and to declare Smith to be the alter ego of BTM.  *Id.*

62.     In a special verdict form, the jury found that Smith was the alter ego of BTM, and that the transfer of the property from BTM to Smith was fraudulent.  *Id.*

63.     An amended Judgment was entered on these findings, and also ordered that the transfers from Smith to Carmen and from Carmen to her trust be voided and that the cost be imposed against all defendants.  *Id.*

64.     The trial court denied the defendants' subsequent motions for judgment notwithstanding the verdict and new trial.  *Id.*

65.     Smith and the other defendants appealed, and the Appellate Court affirmed the Judgment.  *Id.* at *20.

## The Mira Litigation

66.     Meanwhile, upon information and belief, facing the possibility of defeat in the Muse Litigation, Smith concocted a scheme to preserve the value of the Residence for himself.

67.     In December 2010, Smith instructed Alain Driancourt, a Swiss banker whom Smith had first engaged back in 2005 ("***Driancourt***"), to transfer ownership of a British Virgin Islands company called Mira Overseas Consulting, Inc. ("***Mira***") to Norma.  *Mira Overseas Consulting Ltd. v. Muse Family Enters., Ltd.*, 237 Cal. App. 4th 378, 381 (Cal. App. Ct. 2015).

68.     Smith's attorney, Kendrick Jan ("***Jan***"), assisted in the transfer.  Knowing that his presence would raise suspicions from the Muse Parties, Jan went to great lengths to conceal his part in the transfer.  He prepared documentation reflecting that he was serving as Norma's and Mira's lawyer, thereby hoping to conceal communications through the attorney-client privilege with Norma.

69.     On March 4, 2011, Mira commenced litigation in Santa Monica, California against BTM, Smith, Carmen, and Carmen's Trust (the "***Mira Litigation***"), seeking to recover $4.66 million in purported loans to BTM.  *Mira*, 237 Cal. App. 4th

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

14

at 382.  Like the Muse Parties, Mira asserted a fraudulent transfer claim challenging the very same title transfers for the Residence that the Muse Parties had challenged in the already pending Muse Litigation.  *Id.*

70.     At or around this time, Smith contacted another investment banker in Switzerland, Bob Reid, about putting "substantial" assets in a trust.  In an email to attorney Peter Rosenberg, who performed estate planning and tax work for Smith, Reid stated:

> I just spoke with David Smith who apparently has some substantial business assets in the US that he is thinking of potentially putting into a trust.

> I suggest that Kendrick Jan his attorney speak with you to discuss the structuring options and the thinking behind this as a first port of call so that it can be structured correctly from a US perspective.

> The idea would be that we manage this structure either offshore or in the US depending on the best route.

71.     In contrast to their vigorous defense in the Muse Litigation, BTM, Smith, Carmen, and Carmen's Trust did not contest the claims in the Mira Litigation.  Instead, they signed a settlement agreement, which the trial judge in the Muse Litigation later acknowledged had "unusual provisions," and stipulated to a money judgment against themselves for $5,428,900.  *Mira*, 237 Cal. App. 4th at 382.  In turn, Mira stipulated that it would enforce the judgment only against the Residence and then recorded a judgment lien before the Muse Litigation proceeded to trial.  *Id.*

72.     Neither Smith nor his counsel notified the Muse Parties of the Mira Litigation until after judgment had been entered in that matter.  *Id.* at 382-83.  Even then, Smith continued to lie under oath about Norma's involvement and ownership of Mira.  During his August 2011 deposition in the Muse Litigation, Smith testified: "Mira is – I don't even know who it's owned by now."

73.     In October 2011, shortly after judgment was entered in the Mira Litigation, Smith filed for divorce from Carmen.  Smith and Carmen documented their

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

division of assets in a Confidential Mediation Agreement executed in January 2012. The terms of that agreement confirmed Smith's interest in and entity called "Aerium Finance – France" was solely his separate property.  It further provided that Smith was entitled to (1) interest in furniture, furnishings, antiques, and art, (2) jewelry and personal effects, (3) real estate titled solely in Smith's name or with anyone other than Carmen, and (4) all life insurance acquired before, during or after marriage.

74.     After BTM, Smith, Carmen, and Carmen's Trust stipulated to a judgment in Mira's favor in the Mira Litigation in Santa Monica, Mira intervened in the Muse Litigation and filed a complaint seeking a declaration that its secret judgment lien was superior to any potential judgment of the Muse Parties.  *Mira*, 237 Cal. App. 4th at 383.  Jan represented Norma in the lawsuit against Smith even though, as of mid-2012, Jan was also representing Smith and had been business partners with him in no less than fifteen business ventures.

75.     After a bench trial in April 2013, the Santa Monica court entered a judgment in the Mira Litigation finding that the Muse Parties' judgment did not relate back to the date that they recorded their lis pendens, and that the Mira judgment lien was superior.  *Mira*, 237 Cal. App. 4th at 382.  The California Court of Appeals reversed the judgment in its entirety.  *Id.* at 385-87.

76.     Accordingly, in October 2015, the trial court entered a judgment in favor of the Muse Parties, finding that their judgment lien against the Residence had priority.

## The Muse Parties' Multistate, Post-Judgment Collection Efforts

77.     Following the jury verdict in the Muse Litigation, the Muse Parties took various steps to identify and locate Smith's assets in multiple jurisdictions in California, Delaware, Florida, Nevada, Connecticut, and New York.

78.     Smith and his attorneys actively sought to obstruct those proceedings to prevent the Muse Parties from locating and enforcing the Judgment against Smith's assets.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

79.     During post-judgment collection proceedings in California, the Muse Parties served a subpoena on Smith requiring him to produce thirty-six categories of documents related to his financial affairs no later than October 31, 2013.  Smith did not comply.

80.     Despite having numerous bank accounts and business interests that were subsequently identified in the Bankruptcy Case, Smith only produced a one-page document containing a list of fifty-three entities based in France and seventeen entities based in Luxembourg ("***Smith's One Page Production***").  Smith's One Page Production stated:

> To the best of our knowledge, MR DAVID SMITH was registered as either owner, director, manager or officer of the entities listed below upon until 31.12.2009 after which his involvement ceased.

81.     The Muse Parties subsequently filed a motion with the State Court requesting an order compelling Smith to produce documents in response to the subpoena.

82.     On December 17, 2013, the State Court granted the motion and ordered Smith to produce bank account statements for the previous three years, documents reflecting Smith's ownership in any entities, documents reflecting his interests in trusts, documents reflecting any asset transfers during the previous five years, documents reflecting profits and distributions that Smith received for five years, and an unredacted copy of the Confidential Mediation Agreement dividing Smith' and Carmen's assets pursuant to their divorce.

83.     Despite the court's order, Smith's attorney, Saied Kashani, served a "Response To Subpoena Directed to David Smith Following Court Order of December 18, 2013" that Smith verified.   With respect to every category of documents, Smith stated falsely that he had no documents in his possession, custody or control.

84.     The Muse Parties then served Smith with a set of special post-judgment

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

interrogatories.  The interrogatories requested information concerning Smith's financial condition to assist the Muse Parties in locating and enforcing the Judgment.

85.    After being served, Smith failed to respond or object to the interrogatories.

86.    As a result, the Muse Parties were forced to file another motion to compel.

87.    In February 2014, the State Court granted the Muse Parties' motion to compel responses to the interrogatories and issued an order requiring Smith to respond to the interrogatories without objection.

88.    On March 1, 2014, Smith's attorney served responses to the Muse Parties' post-judgment interrogatories in which Smith verified under penalty of perjury that his answers were true and correct.    He did not, however, provide any specifics or produce any documentation identifying the various European entities with respect to which he claimed to have an interest.

89.    The Muse Parties served Smith with a subpoena requiring him to appear for a judgment debtor's examination in February 2014.

90.    Despite a net worth in excess of $30 million in 2008, Smith stated that he was penniless and without any assets, property, bank or securities accounts anywhere in the world as of February 2014.

91.    At the same time, he refused to produce any documentation showing what happened to the $30 million in assets that he received following his divorce from Norma.

92.    In fact, he testified that he did not even attempt to contact any banks in responding to the subpoena.

93.    Smith also refused to produce an unredacted copy of the Confidential Mediation Agreement to conceal Smith's asset, even though the court specifically ordered him to produce such a copy.

94.    In stark contrast to his claim of poverty, however, according to credit

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF

card statements, Smith continued to maintain a rich-and-famous lifestyle following judgment in the Muse Litigation. For example, while in California, Smith lived at the AKA Hotel in Beverly Hills.

95.     Smith also stayed at Norma's "cottage" in Westport (which she sold in May 2014 for $3.05 million), and the apartment on the Upper East Side of New York City (which Norma owned).

96.     Smith also purchased multiple airplane tickets and travelled abroad to attend various social gatherings.

97.     During his judgment debtor's examination, Smith admitted that he received deposits exceeding $200,000 in his Chase Private Client Checking account shortly after the jury verdict in the Muse Litigation.

98.     He also testified that he withdrew those funds and an additional $418,888.81 from an account at Wells Fargo to prevent the Muse Parties from "confiscating" those funds.

99.     When asked what he did with the cash, Smith responded: "Spent it … Hotels, parties, lifestyle, et cetera, et cetera."

100.    Smith provided similarly callous, evasive, and non-credible responses to questions about his other assets.

101.    Smith testified that he did not remember receiving $400,000 in bonuses or commissions in 2009.

102.    Smith also stated that he lost his $250,000 Breguet watch while moving and that he had donated all the furniture from the Residence to charity.

103.    Again, he did not produce any receipt, write-off form, insurance claim, or any documentation to substantiate these claims.

104.    To protect assets that were known to the Muse Parties, Smith instructed his agent Jan to arrange a series of transfers to Norma.

105.    Jan and Smith concealed material facts concerning the transfers intending to thwart the Muse Parties' collection efforts.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

106.   The transfers included, but were not limited to, the following:

(a)   Smith stated that he transferred interests in two hedge funds Chester Global Strategy Fund Limited and Irongate Global Strategy Fund Limited to Norma.  However, he claimed that he could not recall key details like the date of the transfer or the amount of the purchase price.

(b)   Smith testified that he transferred his interests in an entity identified as Genesis Capital Partners, Inc. ("*GCP*") to Norma.  However, he denied recollection of the two Delaware limited liability companies through which he purchased his interest in GCP, Grace Bay Holdings LLC ("*Grace Bay*") and Culver White LLC ("*Culver White*").  Undeterred, the Muse Parties domesticated the judgment in Delaware and obtained an order compelling Jan to appear for a deposition as the companies' agent. The Muse Parties were unable to take those depositions because Smith filed for bankruptcy shortly before they were scheduled, as discussed below.

(c)   Smith testified that he transferred his interest in an entity identified as Genesis Acquisition Management, Inc. ("*GAM*") to Norma in 2012. Despite having access to GAM's bank accounts and corporate records following the transfer, Smith refused to produce documents to the Muse Parties during post-judgment collection proceedings.  He also deliberately concealed documents and information about affiliates of GAM, including but not limited to, DT Capital Inc., Nevada Realty Corporation., Genesis Acquisition Partners, Inc., Genesis Acquisitions Fund, LLC, Genesis Capital Mortgage Fund, LLC, Genesis Real Estate Partners, Inc., Genesis Capital Intermediate Fund, LLC, and Genesis Capital Mortgage Fund II, LLC.

**Smith's Bankruptcy Case and Denial of Discharge**

107.   Two days after the Appellate Court issued its opinion affirming the

Judgment, on October 2, 2014 (the "**Petition Date**"), Smith filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") before the Bankruptcy Court, in a proceeding captioned, *In re Smith*, Case No. 14-51538 (Bankr. D. Conn.) (the "**Bankruptcy Case**").

108.   Smith filed his original Schedules (the "**Original Schedules**") and Statement of Financial Affairs ("**SOFA**") with the Court on October 2, 2014.  The Original Schedules were signed by Smith and declared, under the penalty of perjury, that the answers contained therein were true and correct.

109.   Item 18 of Smith's SOFA required Smith to disclose

[T]he names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.

110.   Smith did not list entities that were identified in the One Page Document Production.  He also failed to list Aerium Finance – France, which was confirmed as his separate property in the Confidential Mediation Agreement.  Instead, Smith listed sixteen different entities under Item 18 without any information about the nature of the businesses, or the beginning or ending dates of his involvement.  These disclosures were material false oaths regarding Smith's substantial interests in GCP, GAM and other shell companies that he used as conduits to fraudulently conceal and dissipate assets.

111.   On November 21, 2014, the Chapter 7 Trustee convened the Section 341 Meeting of Creditors.  Attorneys for the Muse Parties attended the meeting and assisted the Chapter 7 Trustee in her preparation.

112.   At the Section 341 Meeting of Creditors, Smith knowingly provided false

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

testimony that he had fully disclosed his assets (with exception to contents in a storage locker and a potential malpractice action against his attorney Saied Kashani) and liabilities on his Schedules.  He further claimed that his interest in certain corporations, partnerships, and other entities was correctly disclosed in his Schedules.

113.   On February 6, 2015, Smith filed an amended Schedule B ("*Amended Schedules*") listing a number of previously undisclosed assets including an "UNKNOWN" amount in an EFG Bank Account and "possible" interests in Warnest, Ltd., a Swiss company controlled by Driancourt, Zennor Investments, another Driancourt related entity in Switzerland, Ocean Springs Holding, LLC, the Stanford Denton 2010 Trust, and Atlas Investments, an Aerium entity related to a real estate investment in Morocco.

114.   Smith signed the Amended Schedule and stated, under the penalty of perjury, that the answers were true and correct.

115.   On March 19, 2015, Smith filed yet another amended Schedule ("*Second Amended Schedules*") listing an additional interest in BTM Services, LLC and contents of a storage warehouse in Long Island City, New York.  In this Complaint, Plaintiffs refer to the Original, Amended, and Second Amended Schedules collectively as the "*Schedules*."

116.   The Muse Parties filed proofs of claim in the Bankruptcy Case, participated in the Bankruptcy Case, and continued to pursue collection on the Judgment through the bankruptcy process, including by coordinating with the Chapter 7 Trustee.

117.   The Chapter 7 Trustee examined Smith, Norma, Andrew Smith, and Jan under Rule 2004 of the Federal Rules of Bankruptcy Procedure.  Attorneys for the Muse Parties attended every examination, paid for a portion of the Chapter 7 Trustee's travel costs, and assisted the Chapter 7 Trustee in her preparation.  In connection with the examination, the Chapter 7 Trustee requested documents from the Norma and Andrew Smith.  She also served a subpoena on Jan.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

118.   During his examination, Smith provided numerous and ongoing false statements that were deliberately calculated to mislead the Chapter 7 Trustee and the Muse Parties regarding the true nature and scope of his financial circumstances, and reflect a conscious disregard for the truth.  To the extent that Smith made any partial disclosures of facts to the Chapter 7 Trustee or the Muse Parties, such disclosures were incomplete, inaccurate and misleading, and calculated to deflect investigation by creditors and the Chapter 7 Trustee into Smith's true financial circumstances and assets.

119.   In response to Norma's testimony that Smith owned a $300,000 watch, Smith admitted: "I had a Breguet, which is the name of that expensive watch.  Then I had a stainless steel Cartier and a gold Cartier."  When asked "Where are these watches today?" Smith claimed "I don't know.  They were -- in all my moves and moving around what have you, they got -- they went missing."  And again, Smith has not produced anything to explain or corroborate this story.

120.   During the Chapter 7 Trustee's investigation, Smith produced Reports of Foreign Bank and Financial Accounts (IRS Form TD F 90-22.1) for the years 2008 – 2013 disclosing the existence of foreign bank accounts at Credit Suisse (Geneva, Switzerland), HSBC (London, England), Barclays Private Clients International Limited (St. Helier Jersey, Channel Islands), Union Bancaire Privee (St. Helier Jersey, Channel Islands), and EFG Bank (Zurich, Switzerland).  Despite the Chapter 7 Trustee's outstanding request, Smith failed to provide all bank account statements and other information explaining the dissipation of assets held in these accounts.

121.   At his Rule 2004 examination, Smith testified "I believe I have an account [at Credit Suisse] without a balance."  However, he never disclosed any Credit Suisse bank account in the Schedules and, again, has not produced any statements or evidence showing the funds in the Credit Suisse account on the Petition Date or the activity in such account.

122.   Smith further testified that he withdrew approximately $200,000 from his

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF

JP Morgan Chase account immediately after the jury rendered its verdict in the Muse Litigation to prevent the Muse Parties from collecting those amounts.  More generally, he further testified "whatever monies I had left, I turned into cash so it wouldn't be confiscated."  However, he has not provided any documentation or evidence demonstrating what happened to the cash he withdrew.

123.    Smith failed to produce documentation or provide truthful testimony concerning equity interests and other investments.  This included, but is not limited to, the following:

(a)    **Atlas Investments:**  Smith has not produced any documents or communications concerning his interest in Atlas Investments, which was disclosed in the Schedules.  Relevant documents that were not produced include participation agreements, contracts, prospectuses, marketing materials, and other documents or communications bearing upon the nature of the investment and Smith's right to receive carried interest, professional fees, or any other form of distribution.

(b)    **Aerium Finance – France:**  Smith has not produced any documentation or information necessary to evaluate his interest or potential interest in Aerium Finance – France.  According to a press release on its website, Aerium Finance sold four commercial properties in France for €115 million on October 21, 2014 – i.e., three weeks after the Petition Date. The Muse Parties are informed and believe that Smith had a right to receive distributions in connection with the October 21 sale and, in failing to disclose information related to the investment, Smith intentionally hindered, and delayed the creditors and perpetuated a premediated and fraudulent scheme to prevent the Muse Parties from collecting their judgment.

(c)    **DT Capital:**  Smith failed to produce any books or records concerning DT Capital.  He also falsely testified at his 2004 exam that he was not

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

24

familiar with the company.  According to public records, Smith owned fifty percent of the company and served as a co-director with Trixy Weiss through at least 2013 (i.e., less than a year prior to the Petition Date).  DT Capital's principal place of business was located at GCP and GAM's headquarters.  Bank records obtained from third parties, which Smith was obligated to disclose, reveal that Smith transferred funds to DT Capital from GAM's account at Bank of America.

(d)  **Grace Bay & Culver White:**  Smith failed to produce books and records concerning Grace Bay and Culver White and permitted his attorney and duly authorized agent, Jan, to do the same.  This information is integral to understand Smith's financial affairs and concerns entities that Smith disclosed in the Schedules.  At his 2004 exam, Smith testified that Grace Bay was formed with the specific purpose of acquiring shares in GCP for his benefit.  Documents produced in the Bankruptcy Action further demonstrate that Grace Bay and Culver White also acquired equity interests in affiliates of GCP – i.e., Genesis Acquisition Partners, Genesis Mortgage Lending, Inc., Sterling River Realty, and Core Capital Management, LLC.  However, despite the importance of his investment in GCP, Smith testified "Whatever shares were acquired, I don't recall."

(e)  **Domestic Shell Companies:**  Jan established various domestic shell companies for Smith, including, but not limited to, Glen Echo, LLC, Grace Bay Group, LLC, Grace Bay Holdings, LLC, Pecos Canyon, LLC, and Pine Island, LLC.  From 2010 to 2013, Smith purchased investments through these entities by depositing over $2.5 million into Jan's client trust account from his overseas bank accounts.  Smith did not provide bank account statements demonstrating the origin of those funds or material corporate records related to the formation and operation of the shell companies.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

(f)   **Offshore Shell Companies:**  Smith engaged Driancourt and other asset managers abroad to establish scores of offshore shell companies in various tax havens, including but not limited to, Austel Holdings, Ltd., Aviv Bay Holdings, Ltd., Riverside Holdings, S.A., Riverside Nominees, SA, Square De Rive, Ltd., Sonesta Holdings Limited, Zamin Sarl, Zennor Finance, Ltd.  During his 2004 examination, Smith failed to provide material information relating to these entities, their relationship with each other or the assets that the companies held for his benefit.  Smith also failed to produce complete files maintained by his asset managers and attorneys.

124.   Due to Smith's failure to disclose and provide information about various assets, and numerous materially false statements made under oath in his bankruptcy schedules and in examinations before the Muse Parties and the Chapter 7 Trustee, both the Muse Parties and the Chapter 7 Trustee commenced separate adversary proceedings in connection with the Bankruptcy Case asking the Bankruptcy Court to deny Smith a discharge of his debts under the Bankruptcy Code.

125.   On February 22, 2017, the Bankruptcy Court entered its *Order Granting Motion for Default Judgment* against Smith in the Chapter 7 Trustee's adversary proceeding objecting to Smith's discharge (a true copy of which is attached hereto as **Exhibit C**, the "***Order Denying Smith's Discharge***").

126.   In the Order Denying Smith's Discharge, the Bankruptcy Court found, based on "the evidence submitted by the [Chapter 7 Trustee] in support thereof, including examinations under oath of [Smith]" that Smith had failed to make substantial, material disclosures with respect to his assets as required by the Bankruptcy Code and determined that:

(1) [Smith] is not entitled to a discharge under 11 U.S.C. §727 (a)(2), because he failed to disclose or produce documentation concerning bank accounts, loan and credit documentation, documentation reflecting interest in entities and trusts, transfers of assets to insiders, or profits and distributions to the [Chapter 7] Trustee; (2) [Smith] is not entitled to a

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

discharge under 11 U.S.C.  § 727(a)(3),because he failed to maintain business records and provide all requested documents to the [Chapter 7] Trustee; (3) Smith is not entitled to a discharge under 11 U.S.C. § 727(a)(4), *because he knowingly and fraudulently made false statements under oath willfully and with intent to defraud in the course of the bankruptcy case*; and (4) Smith is not entitled to a discharge under 11 U.S.C. § 727(a)(5), because he failed to explain the loss of substantial and identifiable assets.

Order Denying Smith's Discharge at 3 (emphasis added).

127.   Pursuant to section 362(c)(3) of the Bankruptcy Code, the denial of Smith's discharge terminated the automatic stay imposed by Smith's bankruptcy filing pursuant to section 362(a) of the Bankruptcy Code.

## The Muse Parties' Discovery of the Cicladian Trust

128.   Subsequent to the entry of the Order Denying Smith's Discharge, the Muse Parties have continued their investigation of Smith's concealed and secreted assets.

129.   Through those investigative efforts, Plaintiff and the Muse Parties first discovered the existence of the Cicladian Trust in August 2017.

130.   The other information set forth in the Complaint regarding the Cicladian Trust was first discovered by Plaintiff and the Muse Parties during the period, August 2017-June 2018.

131.   Upon information and belief, Smith is the settlor of the Cicladian Trust and the Other Trusts.

132.   Upon information and belief, Smith is the direct or indirect beneficiary of the Cicladian Trust and the Other Trusts.

133.   Upon information and belief, Smith transferred or caused to be transferred in excess of $50 million into the Cicladian Trust and the Other Trusts (the "*Challenged Transfers*").

134.   Upon information and belief, certain of the Challenged Transfers were made within four years of the date on which this action was commenced (the "*Four*

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

*Year Challenged Transfers*").

135.   Upon information and belief, the Four Year Challenged Transfers exceeding $30 million were made subsequent to October 2, 2014.

136.   Smith established the Cicladian Trust and the Other Trusts for the purpose of protecting his assets from the Muse Parties and his other lawful creditors.

137.   The Challenged Transfers harmed the Plaintiff, both by (a) ostensibly putting beyond Plaintiff's reach assets that otherwise would have been available to satisfy the Judgment and (b) causing Plaintiff to incur expenses in investigating and pursuing Smith's assets, which could otherwise have been avoided had Smith satisfied his obligations with respect to the Judgment.

## FIRST CAUSE OF ACTION

### Avoidance of Intentionally Fraudulent Transfers
### Pursuant to Sections 3439.04(a)(1) and 3439.07 of the UVTA
### (Against Smith and the Cicladian Trust Trustee)

138.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 137 as if fully set forth herein and further alleges as follows.

139.   Upon information and belief, Smith made the Challenged Transfers, or caused the Challenged Transfers to be made with the actual intent to hinder, delay, or defraud his creditors, including, without limitation, the Muse Parties, as evidenced by some or all of the following factors:

(a)   the Challenged Transfers were made to an "insider" of Smith, as the Cicladian Trust and the Other Trusts are each Smith's mere alter ego;

(b)   Smith retained possession or control, directly or indirectly, of the property transferred after the Challenged Transfers occurred;

(c)   the Challenged Transfers were concealed from, among other parties, the Muse Parties and the Chapter 7 Trustee, despite Smith being under legal obligations to disclose the Challenged Transfers;

(d)   before the Challenged Transfers were made, Smith had been sued in the

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

1    Muse Litigation;

2    (e)    Smith absconded;

3    (f)    Smith concealed his assets including by, among other things, failing to

4           disclose his interests in the Cicladian Trust to the Muse Parties and the

5           Chapter 7 Trustee, despite being under legal obligations to do so;

6    (g)    Smith attempted to remove his assets from the reach of his creditors by

7           transferring assets to the Cicladian Trust and the Other Trusts;

8    (h)    Smith was insolvent when the Challenged Transfers were made or was

9           rendered insolvent by the Challenged Transfers; and

10   (i)    the Challenged Transfers were made to avoid paying the Muse Parties on

11          the Judgment.

12   140.   Neither Plaintiff nor the Muse Parties discovered, or reasonably could

13   have discovered, the Challenged Transfers before August 2017, when Plaintiff first

14   learned of the existence of the Cicladian Trust.

15   141.   Accordingly, the Challenged Transfers constitute fraudulent transfers

16   which may be avoided under UVTA Section 3439.04(a)(1) and Plaintiff is entitled to

17   the relief set forth in UVTA Section 3439.07.

18   ## SECOND CAUSE OF ACTION

19   **Common Law Fraudulent Transfer of Assets**

20   **(Against Smith and the Cicladian Trust Trustee)**

21   142.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 141

22   as if fully set forth herein and further alleges as follows.

23   143.   Smith made the Challenged Transfers, or caused the Challenged

24   Transfers to be made, with notice of his liability to the Muse Parties and,

25   subsequently, Plaintiff.

26   144.   Smith made the Challenged Transfers, or caused the Challenged

27   Transfers to be made, with the intent to hinder, delay, or defraud the Muse Parties and,

28   subsequently, Plaintiff in their efforts to collect on the Judgment.

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

1  145.   As a result of the Challenged Transfers, Plaintiff has been unable to
2  collect sufficient funds to satisfy the Judgment and Smith has, to date, avoided his
3  obligation to satisfy the Judgment, while enjoying the benefits of his assets that should
4  have been used to satisfy the Judgment.

5  146.   Accordingly, the Challenged Transfers constitute fraudulent transfers at
6  common law.

### THIRD CAUSE OF ACTION

**Aiding and Abetting Smith's Fraudulent Transfers**

**(Against the Facilitating Defendants)**

147.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 146
as if fully set forth herein and further alleges as follows.

148.   The Muse Parties have been harmed by the Challenged Transfers, as they
have shielded Smith's assets from collection efforts and the payment of lawful claims,
including the Judgment.

149.   The Muse Parties have also spent substantial sums of money endeavoring
to locate Smith's remaining assets, and such costs constitute further harm to the Muse
Parties, in addition to Smith's breach of contract and fraud that forms the basis of the
Judgment.

150.   Upon information and belief, the Facilitating Defendants knew, or should
have known, that Smith was attempting to hinder, delay, and defraud his creditors, and
in particular the Muse Parties, by making the Challenged Transfers or causing the
Challenged Transfers to be made.

151.   Each of the Facilitating Defendants gave substantial assistance to Smith
in making the Challenged Transfers or causing the Challenged Transfers to be made.

152.   The Facilitating Defendants' conduct was a substantial factor in causing
harm to the Muse Parties, enabling Smith to hinder, delay, and defraud the Muse
Parties with respect to the Challenged Transfers and the secreted assets in the
Cicladian Trust.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

153.   To the point, Smith would not have been able to make the Challenged Transfers and hide the transferred assets from the Muse Parties without the knowing assistance of the Facilitating Defendants.

154.   Accordingly, the Facilitating Defendants have aided and abetted Smith in his efforts to hinder, delay, and defraud his creditors, and in particular the Muse Parties and Plaintiff.

155.   The Facilitating Defendants' actions have caused damage to the Muse Parties and Plaintiff.

156.   Plaintiff is entitled to compensation for such damage from the Facilitating Defendants.

## FOURTH CAUSE OF ACTION

### (Against All Defendants for Punitive Damages)

157.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 156 as if fully set forth herein and further alleges as follows.

158.   Based on the foregoing, Smith has willfully and maliciously acted to defraud and oppress the Muse Parties and Plaintiff.

159.   Based on the foregoing, each of the Facilitating Defendants have willfully and maliciously aided and abetted Smith's wrongful conduct and have thereby acted to defraud and oppress the Muse Parties and Plaintiff.

160.   Accordingly, Plaintiff is therefore entitled to exemplary or punitive damages in an amount not less than $53 million.  *See* Cal. Civ. Code § 3294(a); *see also* Cal. Civ. Code § 3439.10.

## FIFTH CAUSE OF ACTION

### Avoidance of Constructively Fraudulent

### Transfers Pursuant to Sections 3439.04(a)(2) and 3439.07 of the UVTA

### (Against Smith and the Cicladian Trust Trustee)

161.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 160 as if fully set forth herein and further alleges as follows.

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

162.   Upon information and belief, Smith did not receive reasonably equivalent value in exchange for the Four Year Challenged Transfers.

163.   Upon information and belief, at the time of the Four Year Challenged Transfers, Smith: (a) was engaged or about to engage in business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction; and/or (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

164.   Accordingly, the Challenged Transfers constitute fraudulent transfers which may be avoided under UVTA Section 3439.04(a)(2) and Plaintiff is entitled to the relief set forth in UVTA Section 3439.07.

## SIXTH CAUSE OF ACTION

### Avoidance of Constructively Fraudulent

### Transfers Pursuant to Sections 3439.05(a) and 3439.07 of the UVTA

### (Against Smith and the Cicladian Trust Trustee)

165.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 164 as if fully set forth herein and further alleges as follows.

166.   Upon information and belief, Smith received no reasonably equivalent value in exchange for the Four Year Challenged Transfers.

167.   Upon information and belief, the Four Year Challenged Transfers occurred after Smith became obligated to the Muse Parties.

168.   As a result of the Four Year Challenged Transfers, Smith became insolvent.

169.   Accordingly, the Challenged Transfers constitute fraudulent transfers which may be avoided under UVTA Section 3439.05(a) and Plaintiff is entitled to the relief set forth in UVTA Section 3439.07.

///

///

///

## SEVENTH CAUSE OF ACTION

### Declaratory Judgment that the Cicladian Trust is Smith's Alter Ego

### (Against Smith and the Cicladian Trust Trustee)

170.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 169 as if fully set forth herein and further alleges as follows.

171.   As the settlor and direct or indirect beneficiary of the Cicladian Trust, there is a unity of interest and ownership between Smith and the Cicladian Trust such that the Cicladian Trust is the mere alter ego of Smith.

172.   Adherence to the fiction of the separate existence of the Cicladian Trust from Smith would permit Smith to protect his assets, and in particular, the Challenged Transfers, from his lawful creditors, including, without limitation, the Muse Parties and would, thereby, sanction a fraud and promotion injustice.

173.   Plaintiff is entitled to a judgment of this Court declaring the Cicladian Trust to be the alter ego of Smith.  *See Goodrich v. Briones (In re Schwarzkopf)*, 626 F.3d 1032, 1038 (9th Cir. 2010) ("In the context of trusts . . . the California Supreme Court has allowed alter ego claims where a trust is alleged to be a debtor's alter ego."); *Vaughn v. Sexton*, 975 F.2d 498, 504 (8th Cir. 1992) ("The concept of personal liability for obligations of an entity considered to be an alter ego of an individual is frequently employed in relation to corporations.  We see no reason why the alter ego concept should not have the same effect in the case of the trust."), *cert. denied*, 507 U.S. 915 (1993); *see also Wood v. Elling Corp.*, 20 Cal. 3d 353, 365 (1977) ("If it were alleged and proven that the two trusts in question were themselves alter egos of the [parties], those trusts would essentially drop out as independent legal entities.").

## PRAYER FOR RELIEF

WHEREFORE, PRP demands that this Court enter a judgment in PRP's favor and against the Defendants as follows:

(1)   That the Challenged Transfers are avoided to the extent necessary to satisfy the Judgment;

COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF

Locke Lord LLP
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

(2)    That the Challenged Transfers to the Cicladian Trust were void and without effect because the Cicladian Trust is the alter ego of Smith and may be recovered by PRP to the extent necessary to satisfy the Judgment;

(3)    That PRP be permitted to attach the funds transferred by the Challenged Transfers to the extent necessary to satisfy the Judgment;

(4)    That PRP be permitted to make immediate execution on the funds transferred by the Challenged Transfers;

(5)    That PRP be awarded a lien on Smith's interest in the assets of the Cicladian Trust and, to the extent possible, the assets themselves;

(6)    That Smith be directed to liquidate the assets of the Cicladian Trust and turn them over to the Court for disbursement to PRP in satisfaction of the Judgment;

(7)    The this Court issue a preliminary injunction and a permanent injunction against Smith enjoining him, or any of his agents, including the Facilitating Defendants, from disbursing or otherwise dissipating the assets of the Cicladian Trust pending further orders of this Court;

(8)    That this Court issue an order directing Smith to disclose all documents and information in his custody or control, or that of his agents, including the Facilitating Defendants, with respect to the Cicladian Trust;

(9)    That this Court issue an order directing Smith to cooperate fully with Plaintiff's efforts to obtain the assets of the Cicladian Trust and the Other Trusts to satisfy the Judgment, including, without limitation, by making such instructions and taking such actions with respect to the Facilitating Defendants as may be necessary or helpful in making the assets of the Cicladian Trust and the Other Trusts available to satisfy the Judgment;

(10)   That PRP be awarded a money judgment against Smith for his wrongful conduct in making the Challenged Transfers, or causing them to be made, and thereby harming Plaintiff;

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-3119

34

(11) That PRP be awarded a money judgment against the Facilitating Defendants for aiding and abetting Smith's wrongful conduct, in an amount to be proved at trial;

(12) That PRP be awarded punitive damages against Smith for his wrongful conduct and against the Facilitating Defendants for aiding and abetting Smith's wrongful conduct in an amount not less than $53 million;

(13) That PRP be awarded its costs herein; and

(14) That this Court order such other general and equitable relief as it deems fit and proper.

Dated:  July 20, 2018                              LOCKE LORD LLP


By: /s/ F. Phillip Hosp
     F. Phillip Hosp
     Ira S. Greene

Attorneys for Plaintiff
Pacific Recovery Partners, LLC

**Locke Lord LLP**
300 South Grand Avenue, Suite 2600
Los Angeles, CA  90071-3119

COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, AND FOR OTHER RELIEF